UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANONDOAH D. BRADY

    Petitioner,

v.                                             Case No. 8:08-cv-706-T-23TBM

SECRETARY, Department of Corrections,

    Respondent.
                                       /

## **O R D E R**

Shanondoah D. Brady petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state convictions for robbery and accessory after the fact. Brady alleges several claims of ineffective assistance of trial counsel. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 11)

## **FACTS**[1]

An information (Respondent's Exhibit 14, Vol. I, pp. 1-2) charged Brady with robbery (a first-degree felony), and accessory after the fact (a second-degree felony). Contrary to the information's caption,[2] the body of count one omitted the element of a firearm, resulting in a description of a second-degree robbery offense rather than a first-degree armed robbery offense. The prosecutor orally amended (Respondent's Exhibit 1, p. 3) the style of the case at the change of plea hearing and Brady pleaded

---

[1] This summary of facts derives from Brady's brief on direct appeal. (Respondent's Exhibit 2)

[2] The caption of the information (Respondent's Exhibit 14, Vol. I, p. 1) designated the robbery charge as "P[unishable] B[y] [L]ife."

guilty to both the second-degree robbery charge and the accessory after the fact charge. After the plea but before sentencing, Brady moved to withdraw his plea based upon allegedly exculpatory evidence[3] from his co-defendant Hewlett Thomas. The state court denied Brady's motion after an evidentiary hearing and sentenced Brady to a concurrent term of fifteen years imprisonment for each conviction.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two

---

[3] Shortly after Brady entered his plea he received a notarized letter from co-defendant Hewlett Thomas in which Thomas declared that he and another man (not Brady) committed the crimes.

- 2 -

> conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

In per curiam decisions without a written opinion, the state appellate court affirmed both Brady's convictions and his sentences on direct appeal and affirmed the denial of his subsequent Rule 3.850 motion to vacate. The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Brady bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

- 3 -

This presumption of correctness applies to a finding of fact, but not to a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  The state court's rejection of Brady's post-conviction claims warrants deference in this action.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Brady claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is

- 4 -

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  <u>Strickland</u> requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Brady must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691-92.  To meet this burden, Brady must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

<u>Strickland</u> cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91.  Brady cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial . . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

- 5 -

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

**Ground One**

Brady contends that trial counsel rendered ineffective assistance by wrongly advising Brady that he faced a life sentence upon conviction at trial.  Brady argues that this erroneous advice resulted in his involuntary guilty plea.  The state post-conviction court rejected this claim on procedural grounds in Brady's Rule 3.850 motion:

> In ground one of his [Rule 3.850] motion, the Defendant alleges that his trial counsel was ineffective whereby he incorrectly informed the Defendant that he was facing a life sentence.  The Defendant asserts that he would not have pleaded guilty and would have proceeded to trial had he been correctly advised of the sentence he was facing.
>
> The Defendant presented this particular claim in his prior request to withdraw his plea.  Specifically, the Defendant previously claimed that his prior attorney . . . informed him that he would receive a life sentence if he didn't cooperate.  Because the court previously reached the merits of the Defendant's claim, the facts of which were known to the Defendant at the time he previously requested to withdraw his plea, it would appear that this claim should be denied as successive.  Cf. Foeley v. State, 869 So. 2d 26 (Fla. 2d DCA 2004) (noting that defendant's request to withdraw plea was not successive in part because trial court had not previously reached the merits of the claim).  Additionally, the Defendant had the opportunity to raise the court's denial of the request to withdraw plea on appeal, and this claim should therefore be procedurally barred for this reason.
>
> . . .

> Having found that the Defendant's claim is successive . . . ground one of the Defendant's [Rule 3.850] motion for post-conviction relief shall be denied.

(Respondent's Exhibit 8, pp. 2-3) (court's record citations omitted).

A state court's rejection of a petitioner's constitutional claim on a state procedural ground generally precludes federal habeas review of the claim. Coleman v. Thompson, 501 U.S. 722 (1991); Caniff v. Moore, 269 F.3d1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." Judd, 250 F.3d at 1313 (citing Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990)). See also Ford v. Georgia, 498 U.S. 411, 424-25 (1991).

The state court expressly applied a state procedural rule and held Brady's ineffective assistance claim successive under a state procedural rule. Consequently, the claim was procedurally barred and not cognizable on collateral attack. Torres-Arboleda v. Dugger, 636 So. 2d 1321,1323 (Fla. 1994). The state appellate court affirmed the application of the procedural bar. (Respondent's Exhibit 12) See Harmon v. Barton, 894

- 7 -

F.2d 1268, 1274 (11th Cir. 1990) (state appellate court's per curiam affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review). Ground one is procedurally defaulted.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). See also Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. Henderson, 353 F.3d at 892; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Carrier, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is

- 8 -

actually innocent. Schlup v. Delo, 513 U.S. 298, 327 (1995); Henderson, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. Schlup, 513 U.S. at 327.

Brady fails to demonstrate cause and prejudice excusing his default. Carpenter, 529 U.S. at 451; Carrier, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. Henderson, 353 F.3d at 892. Because Brady fails to proffer specific facts showing an exception to procedural default, this ineffective assistance claim is procedurally barred from federal review.[4]

**Ground Two**

Brady contends that his trial counsel rendered ineffective assistance by both threatening to withdraw and ultimately withdrawing from representation because Brady insisted on a trial. Brady contends that counsel's withdrawal coerced Brady to enter his

---

[4] Even absent the procedural bar, Brady's ineffective assistance claim warrants no relief. The state post-conviction court correctly held that Brady failed to substantiate his Strickland claim:

> Moreover, even addressing the Defendant's claim on the merits, the court would again find this claim to be without merit and conclusively refuted by the record. Specifically, as explained by Defendant's prior counsel during the hearing on the motion to withdraw plea, the fact that count one was phrased as a second-degree felony within the charging language of the information was merely a scrivener's error, which the State could have corrected had the Defendant chosen to proceed to trial. This position is supported in part by the sworn complaint that was filed in this case, which requested that the Defendant be arrested for the crime of robbery with a firearm, as a principal. The record reflects that in exchange for the Defendant's guilty plea, the State orally amended the caption contained at the top of the information at the time of the plea hearing to show robbery as a second-degree felony. The record therefore conclusively refutes the Defendant's allegation that his counsel was deficient in informing him that he was facing a life sentence. Additionally, the Defendant acknowledged during the hearing on the motion to withdraw plea that he had plead to an amended charge of second-degree robbery in exchange for a fifteen-year sentence. Thus, the record reflects that the Defendant was facing a potential sentence of life in prison, based on a possible charge of robbery with a firearm, and that he pled to an amended reduced charge of second-degree robbery. Defendant's counsel cannot be deemed ineffective wherein he accurately advised the Defendant that he was facing a sentence of life in prison.

(Respondent's Exhibit 8, pp. 2-3).

- 9 -

guilty plea. The state post-conviction court rejected this claim in Brady's Rule 3.850 motion:

> In ground two of his [Rule 3.850] motion, the Defendant argues that his counsel was ineffective by threatening to withdraw from the case if the Defendant did not plea[d] guilty. The Defendant alleges that as a result of his counsel's threat to withdraw, the Defendant was pressured into entering a plea that he would not have otherwise entered.
>
> The facts underlying this claim should have been known to the Defendant at the time he chose to enter his guilty plea, since he alleges that his counsel forced him to enter the plea. Therefore, the Defendant could have raised this claim during the hearing on the motion to withdraw his plea that was held prior to sentencing. In fact, the Defendant claimed during the hearing on the motion to withdraw plea that his prior attorney had threatened, forced, or coerced him into entering a plea. At that time, however, the Defendant did not specifically allege that his plea had been rendered involuntary by his attorney's threats to withdraw from the case. Because the Defendant was represented by a different attorney at the time of the hearing on the motion to withdraw plea, it is clear from the record that the instant claim is one which "could or should have been raised" at the time of trial, as contemplated under [R]ule 3.850. The case law is not particularly developed on the issue of whether a defendant is barred from raising involuntary plea claims where he or she previously had the opportunity to assert such claims through [R]ules 3.170(f) or 3.170(l). Compare Dooley v. State, 789 So. 2d 1082 (Fla. 1st DCA 2001) (noting that "nothing in [R]ule 3.170(l) suggests that any and every conceivable involuntary plea claim must be raised in the motion to withdraw plea or risk being forever barred") with Mourra v. State, 884 So. 2d 316 (Fla. 2d DCA 2004) (reasoning that "the creation of [R]ule 3.170(l) may significantly limit the issues that can be raised under [R]ule 3.850 regarding the withdrawal of a plea"). In addition, the Defendant previously moved under [R]ule 3.170(f) to withdraw his plea; [R]ule 3.170(f) requires only a showing of good cause to support withdrawal of a guilty plea, whereas [R]ule 3.850(a)(5) requires a showing that the plea was involuntary. The court finds that the Defendant's claim must be addressed on the merits.
>
> Addressing the Defendant's claim on the merits, the court finds that the claim is conclusively refuted by the record. During the plea hearing the court inquired whether the Defendant was satisfied with the representation of his counsel, to which the Defendant responded, "Yes, sir." Additionally, the court specifically inquired whether anyone was threatening, coercing, or forcing the Defendant to enter a plea of guilty, to

- 10 -

> which the Defendant responded, "[No], sir."[5]  Because the record conclusively refutes the Defendant's claim that his counsel forced or coerced him into entering a guilty plea, this claim is denied.

(Respondent's Exhibit 8, pp. 3-4).

During the plea colloquy Brady averred both that no one had threatened, forced, or coerced him into entering his guilty plea and that he was satisfied with counsel's advice. (Respondent's Exhibit 1, p. 6)  Brady presents no evidence substantiating either his allegation that counsel threatened Brady to induce him to plead guilty or that counsel withdrew from representing Brady because Brady insisted on a trial.[6]  The record shows

---

[5]  Despite the transcript's showing that Brady responded, "No, sir," the post-conviction order erroneously states, "Yes, sir."  (Respondent's Exhibit 1, p. 6)

[6]  Brady testified during the hearing on his motion to withdraw plea that he lied when answering the court's questions during the plea colloquy:

| | |
|---|---|
| Court: | All right. I have a question for the defendant. You indicated that you entered a plea because you were threatened? |
| Defendant: | I was pressured. |
| Court: | Pressured. |
| Defendant: | Yes, sir. |
| Court: | Threatened, forced, right? |
| Defendant: | To a degree, yes, sir. |
| Court: | To a degree. |
| Defendant: | Yes. |
| Court: | By whom again? |
| Defendant: | [Trial counsel]. |
| Court: | Okay. Do you recall me asking you this question while you were under oath: "Is anyone threatening, forcing, or coercing you in order to get you to enter this plea of guilty? |
| Defendant: | Yes, sir. |

(continued...)

---

[6](...continued)

| | |
|---|---|
| Court: | You remember that question? |
| Defendant: | Yes, sir. |
| Court: | Do you remember what your response was? |
| Defendant: | No, sir - - yes, sir. I said, "no, sir" at that time. |
| Court: | All right. So that was a statement that you made to me while under oath that was untrue; is that correct? |
| Defendant: | Yes, sir. |
| Court: | Okay. And then I asked you this question: "You've been represented by [counsel]. Are you satisfied with his advice and counsel?" Do you remember that question? |
| Defendant: | Yes, sir. |
| Court: | Do you recall your answer? |
| Defendant: | Yes, sir. |
| Court: | What was your answer? |
| Defendant: | "Yes, sir." |
| Court: | That was also untrue; is that correct? |
| Defendant: | I know [counsel] was trying to help me. |
| Court: | Sir, my question to you is - - I mean, you just told me that he coerced you into pleading. Now, are you satisfied with his advice and counsel - - |
| Defendant: | At that time, yes, sir. |
| Court: | - - yes or no? |
| Defendant: | At that time, yes, sir. |
| Court: | But you're not satisfied anymore; is that correct? |
| Defendant: | Yes, sir. |
| Court: | Okay. |
| Defendant: | Correct. |
| Court: | And the reason is because you lied? |

(continued...)

- 12 -

that counsel moved to withdraw, citing an ethical conflict, after Brady entered his plea. (Respondent's Exhibit 14, Vol. I, p. 42)  Consequently, counsel's withdrawal from the case could not have induced Brady to enter his plea.

Brady presents no evidence demonstrating entitlement to relief.  See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported claims cannot support an ineffective assistance of counsel claim).  Brady's claim for relief fails because he neither shows that counsel performed deficiently nor establishes that, if trial counsel had performed as he now suggests, Brady would have foregone his plea and proceeded to trial.  Strickland, 466 U.S. at 694.  Brady fails to establish that the state post-conviction court either unreasonably applied Strickland or unreasonably determined the facts in rejecting this ineffective assistance claim.

**Grounds Three and Four**

Brady contends that trial counsel rendered ineffective assistance by both failing to investigate and discover information about co-defendant Hewlett Thomas and failing to depose Thomas.  The state post-conviction court rejected these allegations in Brady's Rule 3.850 motion:

---

[6](...continued)
    Defendant:    That's not the reason.

    Court:    Okay.  That will obviously be an issue that the Court would have to respond to.

(Respondent's Exhibit 2, pp. 32-34)  At the conclusion of the hearing, the state judge concluded that Brady, "while under oath [at the change of plea hearing], indicated to the court that he was entering his plea freely and voluntarily with the advice of counsel with whom he was satisfied, contrary to his testimony today that he was coerced, or quote, pressured, by his attorney."  (Respondent's Exhibit 2, p. 103)  The judge referred Brady to the State Attorney's Office for possible prosecution for perjury during an official proceeding.  (Respondent's Exhibit 2, p. 104)

> In grounds three and four of the [Rule 3.850] motion, the Defendant alleges that his counsel was ineffective for failing to investigate and depose codefendant Hewlett Thomas. The Defendant explains that he would not have pleaded guilty had his counsel investigated and deposed the codefendant, who allegedly recanted his story regarding the Defendant's involvement in the case. The Defendant complains that further investigation into the codefendant would have uncovered information which would have changed the Defendant's decision to plead guilty.
>
> The Defendant submits that he previously informed his counsel of codefendant Thomas['s] name, his location, and the substance of his testimony. Thus, based on the Defendant's sworn motion, the Defendant was specifically aware of the substance of the codefendant's testimony prior to entering a guilty plea. Additionally, the Defendant alleges that counsel's failure to scrutinize Thomas could not be deemed tactical.
>
> During the plea hearing the court inquired whether the Defendant was satisfied with the representation of his counsel, to which the Defendant responded, "Yes, sir." Additionally, the court inquired whether the Defendant understood that his counsel would not be questioning the State's witnesses any further, to which the Defendant responded, "Yes, sir." The court also inquired whether the Defendant understood that his counsel would not be calling any witnesses and would not be asserting defenses on the Defendant's behalf, to which the Defendant responded, "Yes, sir." Lastly, as the court noted in ruling on the motion to withdraw plea, the Defendant made post-Miranda confessions to police, to his attorney, and to the assistant state attorney regarding his involvement with the codefendant in committing the charged offenses. Thus, consistent with the Defendant's present motion, the record indicates that the Defendant was aware of the codefendant's involvement in the charged offense prior to entering a plea of guilty.
>
> In sum, the Defendant was aware of the identity of the codefendant and the substance of his testimony at the time he entered his plea and he stated that he was satisfied with the representation of his counsel and that he understood that his counsel would not question the State's witnesses, including the codefendant, any further. The Defendant's claim that counsel's investigation would have resulted in the codefendant claiming sole responsibility for the offense is purely speculative. The Defendant cannot now allege that he would not have entered the plea but for counsel's failure to investigate codefendant Thomas, where the Defendant, during the plea colloquy, was aware of the substance of codefendant Thomas'[s] potential testimony and knowingly waived the right to have counsel present or cross-examine witnesses. Davis v. State,

- 14 -

>    938 So. 2d 555, 556-57 (Fla. 1st DCA 2006).  Grounds three and four of
>    the Defendant's [Rule 3.850] motion shall be denied as conclusively
>    refuted by the record.

(Respondent's Exhibit 11, pp. 2-3).

Brady averred during the plea colloquy both that he understood counsel would not further question the prosecution witnesses and that he was satisfied with counsel's service.  (Respondent's Exhibit 1, pp. 5-6)  Brady testified during the hearing on his motion to withdraw the plea (Respondent's Exhibit 2, p. 10) that after he pleaded guilty[7] he received a letter from Thomas in which Thomas accepted full responsibility for the crimes.  Neither counsel nor Brady knew before Brady pleaded guilty that Thomas would later provide allegedly exculpatory evidence.[8]  Nothing in the record supports Brady's contention that Thomas would have exculpated Brady if counsel had deposed Thomas.[9]

Brady fails to demonstrate that trial counsel's performance fell outside the bounds of reasonable professional judgment.  See Waters v. Thomas, 46 F.3d at 1512; Chandler v. United States, 218 F.3d at 1314.  Even assuming deficient performance, Brady fails to establish prejudice.  Brady presents no evidence showing that if trial counsel had deposed Thomas, Thomas would have offered exculpatory evidence and testified as Brady hypothesizes.  Brady fails to meet either Strickland's deficient performance or

---

[7] Thomas had invoked his right to remain silent (Respondent's Exhibit 9, attached Invocation of Constitutional Rights) and had not yet entered a plea or proceeded to trial when Brady entered his plea. After Brady pleaded guilty, Thomas also pleaded guilty and received a life sentence.

[8] Thomas testified at the Rule 3.850 evidentiary hearing (Respondent's Exhibit 2, pp. 71-74) that he initially "framed" Brady for the crimes to get back at Brady who had allegedly implicated Thomas in a 1991 case.

[9] Thomas's invoking his right to remain silent precluded his availability as a witness.  See Nelson v. State, 875 So. 2d 579, 583 n.3 (Fla. 2004) ("There are, of course, numerous reasons that a witness would not have been available, including a witness who had asserted his or her right to remain silent . . . .").

prejudice requirement to support a claim of ineffective assistance. Strickland v. Washington, 466 U.S. at 691-92.

See also, Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'").

Accordingly, Brady's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Brady and close this action.

ORDERED in Tampa, Florida, on February 7, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE